FILED

2017 Jul-05  AM 11:49
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

EDWINA HAMBY,

      PLAINTIFF,

VS.

CORIZON HEALTH, INC.,

      DEFENDANT.              **JURY TRIAL DEMANDED**

## COMPLAINT

## I.    JURISDICTION

1.    This action for injunctive relief and damages is brought pursuant to 28 U.S.C. §§ 1331, 1334(4), 1343(4), 2201, 2202 and 29 U.S.C. § 2617(a)(2).  This is a suit authorized and instituted pursuant to the "Family and Medical Leave Act of 1993," 28 U.S.C. § 2601, *et. seq.* ("FMLA"), and the Americans with Disabilities Act, 42 U.S.C. § 12101, *et seq.* (ADA).  The jurisdiction of this Court is invoked to secure protection for and to redress the deprivation of rights and Defendant's violation of the Acts and for injunctive relief and damages.

2.    Plaintiff timely filed her charge of discrimination with the Equal Employment Opportunity Commission (EEOC) within 180 days of the last

discriminatory act (Exhibit A).  Plaintiff further filed this lawsuit within ninety (90) days after receipt of the right-to-sue letter issued by the EEOC (Exhibit B).

## II.     PARTIES

3.     Plaintiff EDWINA HAMBY (hereinafter "Plaintiff"), is a resident of Moody, St. Clair County, Alabama, and performed work for the Defendant in the counties composing the Northern District of Alabama during the events of this case. Pursuant to 28 U.S.C. § 1391(b), venue for this action lies in the Northern District, Middle Division.

4.     Defendant, CORIZON HEALTH, INC., (hereinafter "Defendant") is an entity subject to suit under 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2). Defendant employed at least fifty (50) persons for each working day during each of 20 or more calendar workweeks in the current or preceding calendar year.  Defendant employed these fifty (50) employees within 75 miles of Plaintiff's worksite.

## III.    STATEMENT OF FACTS

5.     Plaintiff hereby incorporates by reference each of the allegations contained in paragraphs 1 through 4 above.

6.     Plaintiff suffers from the physical impairment of a musculoskeletal issue known as spinal hemangioma that resulted in Plaintiff having her vertebrae

fused, screws and rods implanted into her body, a bone graft, a back surgery in 2013, radiation therapy in 2014, and surgery for endometritis during 2014 and 2015.

7.    Plaintiff's musculoskeletal issues affect her life such that the major life activities of performing manual tasks, sleeping, walking, standing, lifting, bending and working are substantially limited as compared to the average person in the general population.

8.    Plaintiff has suffered from spinal hemangioma since 2013.

9.    Defendant hired Plaintiff on or about August 28, 2008.

10.    Defendant contracts with the State of Alabama to provide for healthcare for inmates that are incarcerated at correctional facilities

11.    Defendant employed Plaintiff initially as a Registered Nurse for approximately three years; the Director of Nursing for approximately three and a half years; then Health Services Administrator has for one and a half years; all at the St. Clair Correctional Facility, meaning that Plaintiff was the person in charge of Defendant's St. Clair and Childersburg Work Release.

12.    The position of Registered Nurse required Plaintiff to deliver quality care that is consistent with the scope of practice as outlined by Alabama for Registered Nurses.

13.     Plaintiff was qualified for the position of Registered Nurse with or without a reasonable accommodation of her disability.

14.     Defendant terminated Plaintiff's employment on April 6, 2016.

15.     As of the date of Plaintiff's termination, Plaintiff held the position of Registered Nurse.

## IV.    COUNT ONE - FMLA INTERFERENCE

16.     Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 15 above as if fully set forth herein.

17.     During the 12-month period prior to December 2016, Defendant employed Plaintiff for at least 1,250 hours of service.

18.     Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's anticipated December 2016 leave.

19.     During the week of December 2016, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

20.     During the employment relationship with Defendant, Plaintiff has exercised intermittent FMLA leave for several years.

21.     As of December 2016, Plaintiff suffered from a broken screw in her

back for which significant surgery and recovery time was necessary.

22.  Plaintiff's supervisor was Kelly Phillips.

23.  Kelly Phillips' supervisor is Peggy Minyard.

24.  As of December 2016, Minyard served as Defendant's Health Services Administrator.

25.  Plaintiff notified Kelly Phillips and Peggy Minyard of Plaintiff's need for surgery that she intended to schedule for her back during December 2016.

26.  Kelly Phillips and Peggy Minyard had full knowledge of Plaintiff's need for surgery to be performed in December 2016.

27.  Defendant terminated Plaintiff's employment on October 17, 2016.

28.  Defendant interfered with Plaintiff's FMLA rights by terminating her employment prior to her being allowed to commence leave.

29.  As a result of Defendant's interference with Plaintiff's rights under the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## V.  COUNT TWO - FMLA RETALIATION

30.  Plaintiff adopts by reference each and every material averment contained in paragraphs 1 through 29 above as if fully set forth herein.

31.  On or about July 14, 2014, Plaintiff notified Defendant of a need for

5

FMLA leave that was to be taken on an extended basis with a return to work on or before August 19, 2014.

32.     On or about February 11, 2015, Plaintiff notified Defendant of a need for FMLA leave that was to be taken on an intermittent basis from the dates of February 5, 2015 through September 5, 2015.

33.     On or about September 24, 2015, Plaintiff exercised FMLA leave rights to undergo a surgery that expected to end on or about November 9, 2015.

34.     During the 12-month period prior to December 2016, Defendant employed Plaintiff for at least 1,250 hours of service.

35.     Defendant employs fifty (50) or more persons for each working day during each of the 20 or more calendar workweeks in the current or preceding calendar year of Plaintiff's anticipated December 2016 leave.

36.     During the week of December 2016, Defendant employed fifty or more employees, worked within 75 miles of the location where Plaintiff worked.

37.     During the employment relationship with Defendant, Plaintiff has exercised intermittent FMLA leave for several years.

38.     As of December 2016, Plaintiff suffered from a broken screw in her back for which significant surgery and recovery time was necessary.

6

39.     Plaintiff's supervisor was Kelly Phillips.

40.     Kelly Phillips' supervisor is Peggy Minyard.

41.     In February 2016, Minyard issued Plaintiff a first write-up for attendance violations for missing three days while Plaintiff tended to a flooded basement.

42.     In May 2016, Minyard issued Plaintiff a second written write-up when Plaintiff missed four days for gastritis.

43.     Minyard never told Plaintiff to apply for FMLA leave for those four days of absences.

44.     Defendant's policy states the supervisor must notify FMLA representative when an employee misses four consecutive days.

45.     Minyard issued Plaintiff a third and final written write-up at the end of September 2016.

46.     Plaintiff was going to work that day, but her supervisor, Minyard, told Plaintiff to stay home because of how she sounded due to having bronchitis. Despite this instruction to stay home, Minyard issued Plaintiff a final written warning.

47.     Shortly after returning from work from having bronchitis, Plaintiff decided to step down from management.

48.     As of December 2016, Minyard served as Defendant's Health Services Administrator.

49.     Plaintiff notified Kelly Phillips and Peggy Minyard of Plaintiff's need for surgery that she had scheduled to be performed in December 2016.

50.     Kelly Phillips and Peggy Minyard had full knowledge of Plaintiff's need for surgery that she had scheduled the surgery for her back to be performed in December 2016.

51.     Minyard told Plaintiff that her attendance points would zero out per HR, because she was stepping down from management to a non-management job.

52.     On October 10, 2016, Plaintiff had a severe case of diarrhea and called her supervisor, Phillips, twenty minutes into the start of the shift to tell her that she would not be able to attend work.

53.     Because of her condition that morning, Plaintiff could not call sooner.

54.     On or about October 17, 2016, Minyard told Plaintiff that Defendant terminated her employment for attendance violations.  Plaintiff informed Minyard that Plaintiff's attendance points had zeroed out when she stepped down in late September from management to non-management.

55.     Minyard agreed the points had zeroed out and then she claimed Plaintiff

was being terminated for a no call/no show on October 10, 2016.

56.     Minyard's reason was false as Defendant's policies say that an employee is not considered a no call/no show unless he or she does not call at all or the employee does not call until more than two hours after the start of their shift. Plaintiff called twenty minutes after the start of her shift.

57.     Minyard also told Plaintiff the previous write-ups were "behavioral" in nature, which is illogical as Plaintiff followed company procedure by calling in before the start of her shift on every day she missed, and two of the three write-ups Plaintiff received prior to her termination were for illnesses, and the other for a flooded basement.

58.     Defendant terminated Plaintiff's employment on October 17, 2016.

59.     Defendant's Director of Operations Peggy Minyard informed Plaintiff that Defendant terminated her employment. Kelly Phillips was present when Defendant terminated Plaintiff's employment.

60.     As a result of Defendant's retaliatory termination decision in violation of the FMLA, Plaintiff has been damaged, suffering loss of pay and benefits.

## VI.   COUNT THREE - ADA - Discrimination

61.     Plaintiff adopts by reference each and every material averment

9

contained in paragraphs 1 through 60 above as if fully set forth herein.

62.   Plaintiff suffers from the physical impairment of spinal hemangioma.

63.   Plaintiff's musculoskeletal issues affect her life such that the major life activities of performing manual tasks, sleeping, walking, standing, lifting, bending and working are substantially limited as compared to the average person in the general population.

64.   Plaintiff has suffered from spinal hemangioma since 2013

65.   Defendant was substantially motivated by Plaintiff's disability and continuing need for healthcare in making the decision to terminate Plaintiff's employment.

66.   During the employment relationship with Defendant, Plaintiff has exercised intermittent FMLA leave for several years.

67.   As of December 2016, Plaintiff suffered from a broken screw in her back for which significant surgery and recovery time was necessary.

68.   Plaintiff's supervisor was Kelly Phillips.

69.   Kelly Phillips' supervisor is Peggy Minyard.

70.   In February 2016, Minyard issued Plaintiff a first write-up for attendance violations for missing three days while Plaintiff tended to a flooded

basement.

71.    In May 2016, Minyard issued Plaintiff a second written write-up when Plaintiff missed four days for gastritis.

72.    Minyard never told Plaintiff to apply for FMLA leave for those four days of absences.

73.    Defendant's policy states the supervisor must notify FMLA representative when an employee misses four consecutive days.

74.    Minyard issued Plaintiff a third and final written write-up at the end of September 2016.

75.    Plaintiff was going to work that day, but her supervisor, Minyard, told Plaintiff to stay home because of how she sounded due to having bronchitis.  Despite this instruction to stay home, Minyard issued Plaintiff a final written warning.

76.    Shortly after returning from work from having bronchitis, Plaintiff decided to step down from management.

77.    As of December 2016, Minyard served as Defendant's Health Services Administrator.

78.    Plaintiff notified Kelly Phillips and Peggy Minyard of Plaintiff's need for surgery that she had scheduled the surgery for her back to be performed in

December 2016.

79.     Kelly Phillips and Peggy Minyard had full knowledge of Plaintiff's need for surgery that she had scheduled to be performed in December 2016.

80.     Minyard told Plaintiff that her attendance points would zero out per HR, because she was stepping down from management to a non-management job.

81.     On October 10, 2016, Plaintiff had a severe case of diarrhea and called her supervisor, Phillips, twenty minutes into the start of the shift to tell her that she would not be able to attend work.

82.     Because of her condition that morning, Plaintiff could not call sooner.

83.     On or about October 17, 2016, Minyard told Plaintiff that Defendant terminated her employment for attendance violations.  Plaintiff informed Minyard that Plaintiff's attendance points had zeroed out when she stepped down in late September from management to non-management.

84.     Minyard agreed the points had zeroed out and then she claimed Plaintiff was being terminated for a no call/no show on October 10, 2016.

85.     Minyard's reason was false as Defendant's policies say that an employee is not considered a no call/no show unless he or she does not call at all or the employee does not call until more than two hours after the start of their shift.

12

Plaintiff called twenty minutes after the start of her shift.

86.     Minyard also told Plaintiff the previous write-ups were "behavioral" in nature, which is illogical as Plaintiff followed company procedure by calling in before the start of her shift on every day she missed, and two of the three write-ups Plaintiff received prior to her termination were for illnesses, and the other for a flooded basement.

87.     Defendant terminated Plaintiff's employment on October 17, 2016.

88.     Defendant's Director of Operations Peggy Minyard informed Plaintiff that Defendant terminated her employment.   Kelly Phillips was present when Defendant terminated Plaintiff's employment.

89.     As a result of Defendant's violation of the ADA, Plaintiff has been damaged, suffering loss of pay, benefits, and mental anguish.

## VII.   **PRAYER FOR RELIEF**

**WHEREFORE, PREMISES CONSIDERED,** Plaintiff prays for the following relief:

A.     Grant Plaintiff a permanent injunction enjoining the Defendant, its agents, successors, employees, attorneys and those acting in concert with the Defendant and at the Defendant=s request from continuing to violate the terms of

13

the Family Medical Leave Act and the ADA;

      B.     Enter an Order requiring the Defendant to make Plaintiff whole by awarding her reinstatement to the position she would have had, had she not been terminated; and,

      C.     Award Plaintiff back pay, together with employment benefits, front pay, nominal damages, special damages, liquidated damages, compensatory damages, punitive damages, attorneys' fees and costs, and any additional relief as may be determined by the Court to which Plaintiff is entitled.

_____
ALLEN D. ARNOLD

_____
KIRA FONTENEAU

OF COUNSEL:

FONTENEAU & ARNOLD, LLC
2151 Highland Avenue South, Ste. 205
Birmingham, Alabama 35205
(205) 252-1550 – Office
(205) 502-4476 – Facsimile

14

**PLAINTIFF REQUESTS TRIAL BY STRUCK JURY**

OF COUNSEL

DEFENDANT'S ADDRESS:
CORIZON HEALTH, INC.
c/o CT Corporation System
2 North Jackson Street, Suite 605
Montgomery, AL 36104